IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAMARA BELL,

      Plaintiff,

v.                                                                            CASE NO. 1:08-cv-00207-MP-AK

MICHAEL J ASTRUE,

      Defendant.

_____/

# O R D E R

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security (Commissioner)

denying Plaintiff's applications for supplemental security income benefits (SSI) filed under Title

XVI of the Act.  Previously, this matter was referred to Magistrate Judge Allan Kornblum

pursuant to N.D. Fla. Local Rule 72.2 and 28 U.S.C. § 636(b).  With the passing of Magistrate

Judge Kornblum, the interests of justice require the withdrawal of the referral, and the handling

of the case by the District Judge.  *See* In re Bituminous Coal Operators' Ass'n, Inc., 949 F.2d

1165, 1169 (D.C. Cir. 1991)(discussing the District Court's authority to revise an order of

referral to the Magistrate Judge).  Accordingly, the referral to the Magistrate Judge is withdrawn,

and this case will henceforth be handled by the undersigned directly.

Upon review of the record, the Court concludes that the findings of fact and

determinations of the Commissioner are supported by substantial evidence; thus, the decision of

the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on January 12, 2005, alleging a disability onset date of March 1, 1999, because of depression, carpal tunnel syndrome, fibromyalgia, degenerative disc disease, and heart and kidney problems. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 27, 2007, and entered an unfavorable decision on September 5, 2007. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 12, 2005, the date that the application for SSI benefits was filed. (R. 16). The ALJ also found that Plaintiff has the following severe combination of impairments: fibromyalgia, major depressive disorder, a panic disorder, a history of carpal tunnel syndrome, and obesity. (R. 16). Plaintiff does not have an impairment or combination of impairments that medically meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). After careful consideration of the entire record, the ALJ also found that Plaintiff has the residual functional capacity to perform the full range of light work. (R. 17).

Plaintiff has no past relevant work experience; therefore, transferability of job skills is not an issue. (R. 23). She was born on February 13, 1969, and on the date the application was filed, she was 35 years old, which is defined as "a younger individual." (R. 23). She has a limited education and is able to communicate in English. (R. 23). Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 24). Based on the

above, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, since January 12, 2005, the date that the application was filed. (R. 24).

**C.     ISSUES PRESENTED**

  Plaintiff argues that the ALJ erred in Step Five of the Sequential Analysis by using the

Medical Vocational Guidelines instead of a vocational expert despite Plaintiff's Step Two

"severe" mental health impairments.

  The Commissioner responds that the ALJ properly applied the Medical Vocational

Guideline 202.17 at Step 5 to find Plaintiff not disabled. The Commissioner points out that the

ALJ found Plaintiff had the RFC to perform a full range of light work.   Additionally, the ALJ

did not find that Plaintiff's mental health impairments constitute severe impairments; rather,

when combined with her physical impairments, they constituted a severe combination of

impairments. Thus, the Commissioner reasons that Plaintiff's argument that the ALJ should not

have applied the Medical Vocational Guidelines is without merit.

  The issue thus presented is whether the Commissioner's decision that Claimant is not

disabled is supported by substantial evidence in the record and decided by proper legal

standards.

**D.     STANDARD OF REVIEW**

  Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The

Commissioner's decision must be affirmed if it is supported by substantial evidence and the

correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.

1997). Findings of fact by the Commissioner which are supported by substantial evidence are

conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

"Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Summarizing Plaintiff's relevant medical history, on January 21, 2005, her treating physician, Innocent Odocha, M.D., treated her continued complaints of joint pains, abdominal discomfort, constipation, pain with bowel movement, diarrhea, neck pain, and nausea. (R. 339).

Dr. Odocha opined that Plaintiff was suffering from fibromyalgia, headache and depression. (R.

339). During subsequent treatment with Dr. Odocha, Plaintiff generally continued to complain

of persistent multi-joint pains, bilateral hand pains with swelling, difficulties with fine motor

movements, flank pain, difficulty sleeping, feeling depressed, severe esophagitis, dysuria, pain

and discomfort. (R. 331-349, 389-405).

A consultative examination was performed on April 13, 2005, by Dr. Lance Chodosh,

M.D. (R. 277-83). Based on objective evidence, Dr. Chodosh concluded that Plaintiff was able

to walk, stand and sit normally. (R. 280). According to Dr. Chodosh, Plaintiff was also able to

handle objects, stoop, lift, carry, squat, kneel and crawl. (R. 280). On June 1, 2005, an exercise

electrocardiography revealed negative treadmill EKG. (R. 284-304).

In an Residual Functional Capacity (RFC) Assessment performed on June 4, 2005, a state

agency physician concluded that Plaintiff could lift and/or carry 20 pounds occasionally and 10

pounds frequently. (R. 305-312). Plaintiff could stand and/or walk for up to 6 hours in an 8-

hour workday and sit for the same amount of time. (R. 306). Plaintiff could perform pushing

and/or pulling for an unlimited amount of time. (R. 306). The physician noted that Plaintiff's

allegations are partially credible, but her symptoms are disproportionate to the objective

findings. (R. 310).

On June 16, 2005, at the request of the Office of Disability Determinations, Dr. Louis

Legum, a psychologist, evaluated Plaintiff's ongoing complaints of depression. (R. 313-16).

Plaintiff related that she had been sleeping poorly with "racing" thoughts and pain. (R. 315).

She was obese with poor eating habits contributing to her weight gain. (R. 315). She reported

three suicide attempts, twice by overdose and once by wrist cutting. (R. 315). She also reported

that she was molested as a child "a few times." (R. 315). Plaintiff was experiencing anxiety around crowds and felt claustrophobic. (R. 315). She also had some agoraphobic symptoms and panic attacks. (R. 315). The impressions were pain disorder associated with psychological factors and a general medical condition, bereavement, multiple kidney problems with pain and a Global Assessment of Functioning (GAF) of 45-50. (R. 316).

A Psychiatric Review was completed by a state agency examiner on June 28, 2005, and it was determined that Plaintiff's impairments were not severe. (R. 317-30). It was noted that coexisting non-mental impairments required the attention of another specialty professional. (R. 317). Although the record established that Plaintiff suffered from an affective disorder, i.e. depression, it was concluded that the evidence did not establish the presence of any "C" criteria. (R. 328). Even though Plaintiff reported depressed mood, she did not have a documented psychiatric history and the evaluator concluded the depression was mild. (R. 329). No objective mental symptoms or restrictions were identified during the evaluation. (R. 329). Therefore, he concluded that Plaintiff's mental impairment was not severely limiting. (R. 329).

A second Psychiatric Review was completed on August 30, 2005. (R. 350-363). The reviewing psychologist, Dr. Zelenka, agreed that Plaintiff's impairment was not severe, that it coexisted with non-mental impairments, and that Plaintiff suffered from an affective disorder, i.e., a probable depressive disorder. (R. 350, 353). According to the doctor, Plaintiff additionally suffered from anxiety-related and somatoform disorders, i.e., a probable anxiety disorder, and psychological factors affecting pain and her general medical condition. (R. 350, 355-56). Plaintiff had mild functional limitations in activities of daily living, maintaining social functions, concentration, persistence and pace. (R. 360). The doctor noted that even though

Plaintiff is alleging physical limitations, she attends church, does some daily chores, drives, and shops. (R. 362). Therefore, the doctor concluded her mental limitations were mild. (R. 360, 362).

A second mental evaluation was ordered by the state disability determination office and performed on July 18, 2007, by Dr. William E. Benet. (R. 406-115). Plaintiff reported to Dr. Benet pain in the knees, back, shoulders, and hands bilaterally; a history of recurrent kidney problems; and carpal tunnel syndrome. (R. 407). Plaintiff reported being in constant pain at a level of 6/10 due to her fibromyalgia. (R. 406). She felt depressed at times with recurrent anxiety attacks manifested by muscle tension, chest tightness, sweating, and extreme apprehension. (R. 406). The attacks occurred irregularly from twice a week to once every two months, and they lasted for 5-10 minutes. (R. 407). Plaintiff was continuing to suffer from agoraphobic symptoms, panic in crowded places and reluctance to leave home. (R. 407). She was diagnosed with post-traumatic stress disorder secondary to being raped in jail in 2001 or 2002. (R. 407). Dr. Benet opined that Plaintiff was suffering from a recurrent, mild to moderate, major depressive disorder; a panic disorder with agoraphobia; cocaine abuse in sustained remission; a personality disorder, not otherwise specified, with borderline features; fibromyalgia by history; obesity; and, a GAF of 55. (R. 410).

In an RFC Assessment performed on October 20, 2005, a medical consultant noted that Plaintiff's diagnoses were primarily carpal tunnel symptom and fibromyalgia, and secondarily disc disease and kidney problems. (R. 364-71). The doctor opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. (R. 365). Plaintiff could stand and/or walk for up to 6 hours in an 8-hour workday and sit for the same amount of time. (R. 365).

Plaintiff could perform pushing and/or pulling for an unlimited amount of time. (R. 365). The doctor noted that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. 366). She could never climb ladders, ropes and scaffolds. (R. 366). During this RFC Assessment, the doctor also noted that Plaintiff's symptoms were partially credible and disproportionate to the objective findings. (R. 369).

**F.      SUMMARY OF THE ADMINISTRATIVE HEARING**

A hearing was held on Plaintiff's application on February 27, 2007. At the hearing, Plaintiff was represented by her attorney. (R. 418). Plaintiff testified that she was 38 years old. (R. 424). During the year prior to the hearing, Plaintiff gained 62 pounds without any apparent reason. (R. 424-25).

Plaintiff has a long history of medical problems, including 23 kidney surgeries to remove stones and fibromyalgia. (R. 432-33, 442). At the time of the hearing, according to Plaintiff, she had four stones in her kidneys. (R. 433). Her attorney noted that an MRI of her cervical spine performed in January 2000, showed mild encroachment on the exiting nerve at C6-C7. (R. 442-43).

Plaintiff suffers from carpal tunnel syndrome, which affects her grip in both hands, and her fingers do not fully close. (R. 426, 444). She has some nerve damage in the wrist and the entire palm of the hand. (R. 425-26). Plaintiff underwent two right hand surgeries to relieve her symptoms with no noticeable improvement. (R. 425-26). She testified that the herniated discs in her neck cause her to experience severe numbness in her shoulders and decreased feeling in both hands. (R. 426-27).

Plaintiff also suffers from aches all over her body, including her fingers, all the joints,

neck, and feet.  (R. 440).  She cannot button or snap, which causes her to wear only pull-on

clothes.  (R. 440).  She does not brush her hair and needs assistance with washing it every three

or four days.  (R. 440).  Plaintiff reported that she also experiences radiating pain to her neck and

upper extremities and described it as burning, numbing, stabbing and throbbing, exacerbated by

activity.  (R. 444).  As a result, on some days she is not able to lift anything, while on others she

can lift from five to ten pounds.  (R. 445-46).  Her difficulties with sleeping at night make her lie

down during the day for about two or three hours.  (R. 446).

     Her primary care physician, Innocent Odocha, M.D., is currently investigating possible

lupus disease, but Plaintiff has been unable to afford the tests.  (R. 433-34).  Plaintiff has also

been suffering from a high number of blood clots.  (R. 434).  She has not been following up on

this with additional doctor visits.  (R. 434-35).

     Plaintiff is currently not undergoing mental health treatment for her "severe at times"

depression with a tendency to get "very moody."  (R. 449-50).  Plaintiff also testified that Dr.

Legum noted that she had poor judgment and insight.  (R. 450).  She was "Baker acted" three

times, most recently in April 2001, because of depression, attempted suicide and manic

depression.  (R. 451).

     Plaintiff's current medications include Soma, Effexor, Nexium, Methadone, Aciphex and

Phenergan when needed.  (R. 436, 439).  They contribute to her depression, nausea, and

sleepiness.  (R. 439).  Methadone was prescribed to control Plaintiff's cervical spine and upper

extremity pain; however, her doctors were concerned about her possible drug abuse.  (R. 436).

Plaintiff testified that after her kidney surgery there were complications and she had to seek

treatment at an emergency room where she received pain medication.  (R. 437-438).  Dr.

Lipnick, her treating physician, was informed of the prescription and this resulted in Plaintiff's

discharge from Dr. Lipnick's care. (R. 438). Plaintiff used to take steroids, which worsened her

condition. (R. 448).

Plaintiff is divorced, lives with her parents and does not have any dependents. (R. 422-

23, 427-28). She has three children: two living in college and a seventeen-year-old daughter

who lives with her father close to Plaintiff's residence. (R. 427).

Plaintiff testified that she has not worked for a number of years. (R. 429). She was a

stay-at-home mom. (R. 432). She is not receiving any kind of benefits and her parents are her

sole source of support. (R. 429). Plaintiff applied for food stamps, but her request was denied.

(R. 428-29). She completed eleven years of schooling in a private Christian school; however,

she failed to obtain her GED. (R. 429-30). About ten years prior to the hearing, she took a pre-

GED test, but the results were not good. (R. 430).

Plaintiff can read and write, but she does not write much any more due to her hand

problems. (R. 430). She can handle her money and count out change while shopping in a store.

(R. 431). Plaintiff has never attended any vocational training or job skills training. (R. 431).

She is not seeking employment and she has never contacted Vocational Rehabilitation regarding

assistance in job placement. (R. 431). Plaintiff does not have a driver's license as it was

suspended about three years prior to the hearing for failure to carry insurance. (R. 431-32). At

the time, she lost her home and moved in with her parents while her children moved in with her

ex-husband who sought child support from her. (R. 432).

## G.    <u>DISCUSSION</u>

At Step Five, the Commissioner may in certain cases rely upon the grids to carry his burden of proving that there are jobs which claimant can do despite his inability to perform his past relevant work.  The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." <u>Wolfe v. Chater</u>, 86 F.3d at 1078, quoting <u>Passopulos v. Sullivan</u>, 976 F.2d 642, 648 (11th Cir. 1992).  <u>See</u> <u>also</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do unlimited types of [] work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).

Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990).  The term "significantly limit basic work skills" means that the limitations "prohibit a claimant from performing 'a *wide* range' of work at a given work level." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1243 (11th Cir. 2004).   Nonexertional limitations affect a person's ability to meet the other demands of work and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands.  <u>Id.</u> at 1242, n.11.

In the instant case, the ALJ carefully considered the entire record and found that Plaintiff had RFC to perform the full range of light work.  (R. 17). In making this finding, the ALJ considered and accorded considerable weight to the opinions of two State Agency medical consultants and the opinions of two consultative examiners, Drs. Benet and Legum, neither of

whom found any significant mental limitations. (R. 20, 350-63). Further, the ALJ noted inconsistencies in information provided by Plaintiff to medical providers in reference to her prior treatment, specifically that she told one doctor that she had only had mental health treatment once 22 years ago, yet she reported to Dr. Legum that she had three suicide attempts and was admitted twice to the Crisis Stabilization Unit. (R. 19-20). However, no records support this treatment. (R. 20). The ALJ also concluded that no medical evidence in the record substantiates a finding of more than mild limitations in this case, and Plaintiff's own testimony reveals that she is capable of substantial attention and concentration, understanding, remembering, and carrying out complex functions and exercising independent judgment. (R. 19-20). The ALJ also noted that the evidence received into the record after the reconsideration determination did not provide any new or material information that would alter any findings about Plaintiff's RFC. (R. 20).

Based on the above, the ALJ's finding that Plaintiff had RFC to perform the full range of light work is supported by substantial evidence, it is conclusive and it may not be disturbed. 42 U.S.C. § 405(g); <u>Miles</u>, 84 F.3d at 1400; <u>Graham</u>, 129 F.3d at 1422. Since Plaintiff can perform a full range of light work, her limitations do not "significantly limit her basic work skills" and exclusive reliance on the grids is appropriate. <u>Phillips</u>, 357 F.3d at 1243; <u>Swindle</u>, 914 F.2d at 226. Accordingly, the ALJ properly applied the grids to find that there are jobs existing in the

national economy that Plaintiff is able to perform, and he was not required to use a vocational

expert.  Therefore, Plaintiff is not disabled.

Accordingly, it is

**ORDERED AND ADJUDGED:**

The referral of this case to the Magistrate Judge is withdrawn, and this case will be henceforth handled by the undersigned.

The decision of the Commissioner is AFFIRMED.

**DONE AND ORDERED** this *23rd* day of February, 2010

_____*s/Maurice M. Paul*_____

Maurice M. Paul, Senior District Judge